**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
————————————————————————

**ANDREW W. LESPERANCE,**

                                               **Plaintiff,**

        **vs.**                                                    **7:10-CV-01273**


**THE COUNTY OF ST. LAWRENCE,** *et al.,*

                                               **Defendants.**
————————————————————————

**THOMAS J. McAVOY,**
**Senior United States District Judge**



                         **DECISION & ORDER**

**I.      INTRODUCTION**

        Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 asserting that

Defendants are liable to him for failing to properly supervise a probationer who grievously

injured him.  See Compl. [dkt. # 1]; proposed Amed. Compl. [dkt. # 15-1].  Defendants

have moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6).  Mot. [dkt. # 13].

Plaintiff has responded by bringing a cross-motion to amend the Complaint, seeking to

cure some of the purported defects which form the basis of Defendants' motion to dismiss.

See Cross-Mot. [dkt. # 15].  Defendants have opposed the cross-motion, contending that

amendment would be futile. See Reply & Opp. [dkt. # 16].

**II.      STANDARD OF REVIEW**

        Because leave to amend should be freely given when justice dictates*,* see Kassner

                                         1

v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 242-44 (2d Cir. 2007); Fed. R. Civ. P. 15(a), and because Defendants' arguments of futility are the same as those attacking the Complaint, the Court will consider the motion to dismiss as applied to the proposed Amended Complaint. Devarnne v. City of Schenectady, 2011 WL 219722, at *2 (N.D.N.Y. Jan. 21, 2011).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)(quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65. "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965. "'[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'" Id. at 1965 (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)(quoting Twombly, 550 U.S. at 570). A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement." Ashcroft, 129 S. Ct. at 1949. Legal conclusions must be supported by factual allegations.

Iqbal, at 1950.  "Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice."  Id. at 1949.  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Id.  "Where a complaint

pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line

between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S.

557) (internal quotations omitted).

## III.    BACKGROUND

The factual allegations in the proposed Amended Complaint, deemed to be true for

purposes of this motion, concern the actions of a third party, Harry E. Klages, II, and

Defendants' interactions with him.[1]  Klages was twice convicted in New York state court of

felony attempted assault arising from his unprovoked attacks (one with a hammer and one

with a knife) on random members of the community.  He has a history of mental illness

and alcohol and drug use.  Klages was placed on probation as a result of his convictions,

and was under the probationary supervision of Defendants at all times relevant to this

action.  As conditions of his probation, Klages was, inter alia, (1) directed to engage in

mental health, alcohol and substance abuse counseling; (2) prohibited from purchasing,

possessing, or consuming alcoholic beverages; (3) ordered to refrain from the use,

possession, or sale of any narcotics; (4) directed to surrender all firearms and weapons to

the local sheriff's office; and (5) prohibited from shipping, transferring, purchasing or

---

[1]Defendants named in the proposed Amended Complaint are St. Lawrence County; Francine M.
Perretta, Director of the St. Lawrence County  Probation Department; and John Doe, the probation officer
responsible for supervising Harry Klages, II.

3

transporting any weapons.

Klages's father, step-mother, and girlfriend orally notified the St. Lawrence County Probation Department Director and Klages's Probation Officer that Kleges failed to enter into alcohol and substance abuse counseling because he had not received the proper referral from the Probation Department, and further advised that Klages continued to use alcohol.  Klages's step-mother also wrote letters to the Probation Department advising of Klages's "continuing and violent behavior and alcohol use."  Am. Compl. ¶ 23.  Defendants were also aware that Klages "maintained weapons on his person and/or in his residence, including but not limited to [a] very large butcher knife." Id. ¶ 31.[2]

Defendants did not report any of Klages's asserted probation violations to the state court that imposed probation, or make any other efforts to enforce the above-cited terms of Klages's supervision.  Further, the County Probation Department Director and Klages's Probation Officer told Klages's father and step-mother to "stop bothering the Probation Department" with "unrealistic expectations," and threatened them with criminal prosecution if they did not stop "harassing" the Probation Department and its employees regarding Klages's asserted probation violations.  Id. §§ 26-27.

On January 30-31, 2008, Klages hosted an all night party at his apartment in Massena, New York.  Plaintiff attended as a guest.  At the party, Klages possessed and consumed alcoholic beverages and narcotic substances and became drunk and violent. "In the early morning hours of January 31, 2008, Mr. Klages unlawfully detained [Plaintiff]

----

[2]The Court presumes that this knowledge was obtained from conducting a home visit of Klages's residence.  From the allegations in the Amended Complaint, it appears that Klages lived with his father and step-mother at one point, and, perhaps at a latter time, at his own apartment.

4

against his will. Thereafter, he used multiple weapons to inflict grievous bodily harm on [Plaintiff], such that Mr. Klages' physically assaulted, tortured, mutilated, dismembered and disemboweled [Plaintiff] over a significant period of time in an attempt to murder him." Id. ¶ 37.

Plaintiff contends that he suffered the brutal attack from Klages "[a]s a result of the multiple intentional actions, negligent acts and negligent omissions and failures to act by the defendants," id., including the failure to properly supervise Klages and to enforce the terms and conditions of his court ordered probation. Id. ¶¶ 54-57.  In this regard, Plaintiff alleges that Defendants' "reckless[] indifferen[ce] to Mr. Klages' behavior," id. ¶ 58, "created the dangerous situation which resulted in harm to Plaintiff," id. ¶ 60, and which was the proximate cause of "a violation of [Plaintiff's] 14th Amendment rights to due process and protection, including his right to bodily integrity." Id. ¶ 62.

## IV.    DISCUSSION

### a.  State Created Danger Doctrine

Defendants argue that, even when accepting all of the allegations of the proposed Amended Complaint as true, Plaintiff fails to state viable Fourteenth Amendment substantive due process claims. The Court agrees.

The substantive component of the Due Process Clause of the Fourteenth Amendment "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" Collins v. City of Harker Heights, Tex., 503 U.S. 115, 124 (1992)(quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)). However, in DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189

(1989), the Supreme Court rejected claims that a Department of Social Services's failure to remove a children from an apparently abusive household constituted a violation of substantive due process, noting that the Due Process Clause was intended as a limitation on the state's power to act, "not as a guarantee of certain minimal levels of safety and security." DeShaney, 489 U.S. at 195.  The Court held that "[n]othing in the language of the Due Process Clause itself requires the state to protect the life, liberty, and property of its citizens against invasion by private actors." Id.  The Court reasoned that "[i]f the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them." Id. at 196-7.  Thus, the Court concluded that "[a]s a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Id. at 197; see also id. at 196.[3]

Since DeShaney, the courts have recognized two exceptions to the general rule that the government has no obligation to protect private parties from the acts of other private parties. See Matican v. City of New York, 524 F.3d 151, 155 (2d Cir. 2008).  One exception applies when there is a special relationship between the government and the victim, and the second applies when there is conduct by the government that "in some way . . . assisted in creating or increasing the danger to the victim." Okin v. Vill. of Cornwall–On–Hudson Police Dep't, 577 F.3d 415, 428 (2d Cir. 2009)(quoting Dwares v.

---

[3](Noting that the Due Process Clause "forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. . . [T]he Due Process Clauses generally confer no affirmative right to governmental aid.")

City of New York, 985 F.2d 94, 99 (2d Cir.1993)); see Ying Jing Gan v. City of New York, 996 F.2d 522, 533 (2d Cir.1993)("[I]n exceptional circumstances a governmental entity may have a constitutional obligation to provide . . . protection, either because of a special relationship with an individual, or because the governmental entity itself has created or increased the danger to the individual."); Pena v. DePrisco, 432 F.3d 98, 109 (2d Cir. 2005) ("'special relationship' liability arises from the relationship between the state and a particular victim, whereas 'state created danger' liability arises from the relationship between the state and the private assailant.").  Plaintiff contends that the state created danger exception to DeShaney applies in this case.[4]

The state created danger exception, first articulated by the Second Circuit in Dwares, essentially holds that a government actor can be held liable for a substantive due process violation when the government takes some affirmative step that "assist[s] in creating or increasing the danger to the victim." Dwares, 985 F.2d at 98-99; see also Lombardi v. Whitman, 485 F.3d 73, 80 (2d Cir. 2007) (noting potential liability for government official whose "affirmative act . . . creates an opportunity for" third party to harm victim).  This affirmative act might occur in the form of  "repeated, sustained inaction by government officials, in the face of potential acts of violence," thereby constituting "'prior assurances' rising to the level of an affirmative condoning of private violence, even if there is no explicit approval or encouragement."  Okin, 577 F.3d at 428  (internal citation omitted).  In this regard, a substantive due process violation may arise by "implicit

---

[4]The special relationship exception would not apply in this case inasmuch as this exception arises when "a government actor has assumed an obligation to protect an individual by restricting the individual's freedom in some manner, as by imprisonment." Lombardi v. Whitman, 485 F.3d 73, 79 n.3 (2d Cir. 2007); see Matican v. City of New York, 524 F.3d 151, 156 (2d Cir. 2008)("Our own opinions have ... focused on involuntary custody as the linchpin of any special relationship exception.").

encouragement" of the offender's actions. <u>See</u> <u>id.</u> at 430 (police officers' failure to properly investigate repeated allegations of domestic violence or arrest the offender despite the husband's statement that sometime he "smacks [his wife] around" and instead discussed football with the husband, implied that the husband's actions were permissible and thus affirmatively "increased the risk of violence to the victim"). A passive failure to act, however, is insufficient to sustain a state created danger Due Process Clause claim. <u>See</u> <u>id.</u> at 428 (the Due Process Clause is implicated when a government official engages in "affirmative conduct -- as opposed to passive failures to act -- creat[ing] or increase[ing] the risk of private violence, and thereby enhances the danger to the victim.") (citing <u>Dwares</u>, 985 F.2d at 99).

The allegations in the instant case, when boiled to their core, are merely that Defendants did not enforce the terms of Klages's probation. There are no allegations plausibly supporting the proposition that Defendants performed some affirmative act that increased Plaintiff's vulnerability to an attack by Klages. Significantly, there are no allegations that anyone from the St. Lawrence County Probation Department was aware that Klages associated with Plaintiff, much less that Klages harbored some motivation to attack him. Moreover, there are no allegations that Defendants took any action, or engaged in any inaction, which plausibly supports the conclusion that Defendants signaled to Klages - either explicitly or implicitly -  condonation for an attack on Plaintiff.

As this Court has noted in the past, courts must be careful to avoid transposing allegations of negligence and nonfeasance into affirmative action. <u>Hilbert S. v. County of Tioga</u>, 2005 WL 1460316, at *5 (N.D.N.Y. June 21, 2005). To do so would, in practice, overturn <u>DeShaney</u>. Certainly, it could be argued that if Defendants had done something

more, the injury *might* not have occurred and, therefore, the state actor enabled the victimizer.  But the difference between standing back and doing nothing, see DeShaney, 489 U.S. at 20 ("The most that can be said of the state functionaries in this case is that they stood by and did nothing when suspicious circumstances dictated a more active role for them."), and assisting "in *creating or increasing the danger* to the victim," Dwares, 985 F.2d at 99 (emphasis added), although subtle, is nevertheless distinguishable. See Pena, 432 F.3d at 109 (courts must "tread a fine line between conduct that is 'passive' as in DeShaney and that which is 'affirmative' as in Dwares."). "The Supreme Court has specifically pointed out that the Due Process Clause is not implicated by an official's negligent act . . . .  Indefensible passivity and nonfeasance do not rise to the level of a constitutional violation."  Santucci v. Newark Valley School Dist., 2005 WL 2739104, at *5 (N.D.N.Y. Oct. 24, 2005)(citing cases).

The allegations in this case are of a passive failure to act to enforce the terms of Klages's probation.  There are no factual allegations that would support the conclusion that Defendants engaged in any affirmative conduct that increased Plaintiff's vulnerability to an attack by Klages.  The lack of an allegation of affirmative conduct that could plausibly be deemed to have increased Plaintiff's vulnerability to attack from Klages is, in itself, fatal to the substantive due process claims. See Pena, 432 F.3d at 111 (where there is no action or affirmative conduct, simply failing to intercede or punish misconduct is not sufficiently "affirmative" to trigger the "state created danger" exception); Rose v. Zillioux, 2001 WL 1708796, at * 7 (N.D.N.Y. Dec. 27,  2001)("Plaintiff's reliance upon the 'state-created danger' theory fails because she has not proffered any evidence to demonstrate that Defendants took any action that rendered her more vulnerable to illicit

sexual conduct.").

"Even assuming *arguendo* that plaintiff sufficiently pleaded a . . . state-created

danger, [his] substantive due process claim is deficient for the independent reason that it

lacks allegations of conscience-shocking conduct."  Robischung-Walsh v. Nassau County

Police Dept., 2011 WL 1625005, at * 2 (2d Cir. April 29, 2011)(unreported)(citing Okin,

577 F.3d at 431 ("To establish a violation of substantive due process rights, a plaintiff

must demonstrate that the state action was 'so egregious, so outrageous, that it may fairly

be said to shock the contemporary conscience.'") (quoting Cnty. of Sacramento v. Lewis,

523 U.S. 833, 847 n. 8 (1998))); see Pena, 432 F.3d at 112.  While Klages's behavior

toward Plaintiff is conscience-shocking, Defendants' failure to enforce the terms and

conditions of Klages's probation order is not.  As the Supreme Court explained in Lewis,

"the Due Process Clause was intended to prevent government officials from abusing their

power, or employing it as an instrument of oppression." Lewis, 523 U.S. at 846  (internal

quotations, alterations, and citation omitted).  "[T]he substantive component of the Due

Process Clause is violated by executive action only when it can properly be characterized

as arbitrary, or conscience shocking, in a constitutional sense." Id. at 847 (internal

quotations and citation omitted).  The Supreme Court has:

> rejected the lowest common denominator of customary tort liability as any
> mark of sufficiently shocking conduct, and [has] held that the Constitution
> does not guarantee due care on the part of state officials; liability for
> negligently inflicted harm is categorically beneath the threshold of
> constitutional due process. . . .  It is, on the contrary, behavior at the other
> end of the culpability spectrum that would most probably support a
> substantive due process claim; conduct intended to injure in some way
> unjustifiable by any government interest is the sort of official action most
> likely to rise to the conscience-shocking level.

523 U.S. at 848-89 (emphasis added).

10

While deliberate indifference to the welfare of a private citizen may rise to the level of conscious shocking conduct when government officials have the knowledge of and the ability to prevent impending harm,  see id. at 853, there are no allegations in this case plausibly supporting the contention that Defendants had reason to believe that Klages intended to assault Plaintiff.  The allegations that Defendants were deliberately indifferent to Klages's compliance with the terms of his probation, and that, in the course of his attack on Plaintiff, Klages violated the terms of his probation by ingesting alcohol and drugs and possessing a butcher knife, do not equate with a conclusion that Defendants were deliberately indifferent to Plaintiff's welfare.  To hold otherwise would make the probation department, and its employees, the insurers of the safety of untold numbers of people who might be injured by a probationer known to have violated the terms of his or her probation. The Due Process Clause does not support this broad interpretation of deliberate indifference. See Sharp v. Town of Greece, 2010 WL 1816639, at *5 (W.D.N.Y. May 3, 2010) ("Allowing this claim to proceed would turn claims of negligent . . . supervision into claims implicating the Constitution.")(citing Paul v. Davis, 424 U.S. 693, 701 (1976)("[S]uch a reading would make the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States.")). Because there are no plausible factual allegations that Defendants were aware of Klages's interaction with Plaintiff, there is no basis to conclude that Defendants exhibited deliberate indifference to Plaintiff's safety.  Thus, Defendants' failure to enforce the conditions of Klages's probation, in this context, does not constitute conduct so egregious or so outrageous as to shock the contemporary conscience.

Accordingly, Plaintiff fails to state a Due Process Clause claim upon which relief

can be granted.  Because this disposes of the constitutional violation underlying all claims asserted in both the Complaint and proposed Amended Complaint, the Court has no reason to address Defendants' remaining arguments. See e.g. Segal v. City of N.Y., 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell was entirely correct.").   For the same reason, Plaintiff's motion to amend the Complaint is denied as futile.

## V.      CONCLUSION

For the reasons stated above, Defendants' motion to dismiss this action [dkt. # 13] is **GRANTED** and the Complaint is **DISMISSED** in its entirety.  Plaintiff's cross-motion to amend the Complaint [dkt. # 15] is **DENIED** as futile.

**IT IS SO ORDERED**

**Dated:** August 18, 2011

Thomas J. McAvoy
Senior, U.S. District Judge